**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

In re:

Ellen Lucille Vernon-Williams
and Cases listed in Exhibit "A"

Case No. 04-37223-DOT and
Exhibit "A"

Ernest W. Brown, Jr.
Ida Mae Brown
and Cases listed in Exhibit "1"

Case No. 04-37664-DOT and
Exhibit "1"

Chapter 13

Debtor.

**RESPONSE TO CLOSING**
**ARGUMENTS OF THE BOLEMAN FIRM**
**AND TO BRIEF ON LAW OF THE CASE**

The U.S. Trustee, by counsel, hereby responds to the Closing Arguments of the Boleman Firm as follows:

The Boleman Firm has the burden of proof to show that it has earned all of the requested supplemental fees. In re Computer Learning Ctrs, 272 B.R. 897, 908 (Bankr. E.D. Va. 2001.) This burden of proof extends to all aspects of the fees requested and necessarily includes the time spent on the various tasks involved. As this court stated in its initial opinion concerning these eleven fee applications, "...it is undisputed that the Boleman Firm did not record its actual time spent in regard to the contested supplemental fee applications." Vernon-Williams, opinion p. 13. United States District Court Judge Spencer's opinion does not change where the burden of proof lies in these cases. He says, as to actual time records, that..."[t]heir unavailability, however, does not preclude further analysis..."Boleman v. UST, 355 B.R. 548, 553 (E.D. Va.2006). The fact that the analysis may continue, however, does not shift the burden of proof.

It is noteworthy that in trying to carry its burden of proof at the April 30, 2007 hearing, the Boleman Firm never tried to elicit testimony concerning the actual time spent on any task. Their sole witness, Mark Leffler, testified concerning what was done in these cases, but not how

Robert B. Van Arsdale, Esq.., AUST, VSB No. 17483
Office of the United States Trustee
600 E. Main Street, Suite 301
Richmond, VA 23219
(804) 771-2310

long any task took. In the Vernon-Williams case, given the opportunity to confirm on cross-examination that 6.2 hours was an accurate statement of the time spent by the attorney and staff person on the initial interview with the client, Mr. Leffler stated, in part, "Well, that begs the question of how do we calculate the time." Transcript p 60. He did not confirm that 6.2 hours accurately reflected the time actually spent on the initial client interview.

The Boleman Firm states that it has now concluded that there is no distinction between "Initial Services" and "Supplemental Services." The U.S. Trustee agrees that this distinction lends little to the ultimate analysis of whether fees should be awarded. But this is not the picture drawn by the Boleman Firm in each of the Applications for Supplemental Compensation currently before the Court. Each of them is broken into grids depicting "Initial Fees" and "Supplemental Fees" with each category being broken down into very small tasks the sum of which increases the total amount of time being charged to the client.[1]

The U.S. Trustee agrees, and has always maintained that the only effect of the applicable version of Local Rule 2016-1 is to cap a chapter 13 fee at $1,500.00 if the applicant does not wish to file a fee application. There is no such limit if the applicant will submit "complete time records" with its application in accordance with the Court's "Requirements for Supplemental Fee Applications in Chapter 13 Cases" This amount is, however, a maximum amount, not a set fee.

---

[1] Each very small task commands a time entry of at least .1 hours simply because there is no recorded time segment smaller than that. A task that exceeds 6 minutes jumps right up to a .2 hours. By recording each mini-task as a discrete event, there also is no accounting for the overlap between tasks that are not really discrete. For example, on the Vernon-Williams grid accompanying the application, line 15, "gather initial information regarding real estate owned by client", line 16, "gather initial information regarding vehicles owned by client, and line 19, "gather initial information on all potential secured debt" necessarily overlap insofar as the debtor owned real estate and a car. This overlap is never factored out of the equation. In addition to the overlap effect, just by the very nature of the process itself, the more small tasks that are identified and quantified, the greater the exaggeration effect becomes.

Now it is true that from the initial total generated by the grid, the Boleman Law Firm provides a"write-off" that reduces the amount actually being requested to be paid; however, for the reasons stated immediately above, these deductions are perhaps more correctly characterized as adjustments that start the process of bringing the amount being sought more in line with reality. These adjustments, rather than being true discounts, simply help to reduce the exaggeration created by the grid in the first place. Unfortunately, there is no way to quantify whether the exaggeration of the grid is ever really eliminated.

2

If challenged, a debtor's attorney would have the burden of proving that the maximum "no-look" fee of $1,500.00 had been earned even in a case where no supplemental fee has been applied for.

The U.S. Trustee, however, points out that the Requirements for Supplemental Fee Applications in Chapter 13 Cases, does speak to the matter of what is to be included in an "initial fee." Specifically, it states that, "...except for very unusual circumstances, the court requires that an attorney's initial fee charge for representing a debtor in a chapter 13 case will cover the attorney's services up through the § 341 meeting plus other routine services. Thus a supplemental fee request should not include time charges until after the § 341 meeting." The Court, by promulgating these procedures, has determined that certain tasks should be included in the "initial fee." For this reason, even if the Boleman Firm no longer embraces the idea of separately accounting for Initial and supplemental time, the Court does.

The real problem here is that the Boleman firm has already been paid at least $1,500.00 in legal fees in each of these cases and the firm has not proven that it has spent the total hours in the whole case that would be required to justify even this payment. And with these supplemental fee applications, they have requested even more money. There are also several instances of supplemental fees being requested for work done well prior to the § 341 meeting.

Now that the Boleman Firm has separated itself from the dichotomy between "initial services" and "supplemental services" that it has helped to sustain through the years, it states that the only thing it must demonstrate is that it is entitled to the "total fee" requested. Again, the U.S. Trustee does not disagree with that statement, except to the extent that the Boleman firm has not kept the time records as set forth in the Court's "Requirements for Supplemental Fee Applications in Chapter 13 Cases" and except to the extent that all fee requests must be reasonable. The Boleman firm has not, after now two trials on these matters, proven how much time it has spent on these cases.

Finally, at the April 30, 2007 hearing, the Boleman Firm introduced the case of J.P. v. County School Board of Hanover, 2007 WL 840090 (E.D.Va. March 15, 2007) requesting that this Court find the Hanover case to be instructive here. The main problem in the Hanover case was a matter that has been dealt with in Bankruptcy Courts for a long time. Lumping together time entries is discouraged because it makes it difficult for the Court to factor out accurately time which the Court wants to disallow. But in the Hanover case, there were contemporaneous time

3

records for the Court to review to begin its analysis. There were contemporaneous time records to inspect and to conclude were lumped. The <u>Hanover</u> Court cites to <u>Guidry</u> as stating: "That burden includes supplying documentation which "reflects reliable contemporaneous recordation of time spent on legal tasks that are described with reasonable particularity, sufficient to permit the court to weigh the hours claimed and exclude hours that were not 'reasonably expended.' " <u>Guidry v. Clare,</u> 442 F.Supp.2d 282, 294 (E.D.Va.2006) (citations and internal quotation marks omitted). The lack of contemporaneous recordation of time in the Boleman cases is a much more serious problem than the lumping found in the <u>Hanover</u> case.

It is more serious because it was done in the face of clear requirements set forth by Judge Tice in <u>In re Harris</u>, 1998 WL 408896 (Bankr. E.D. Va. 1998), "Even though the attorney initially charges a flat fee for services leading to the filing of a chapter 13 petition, all attorneys in this district are expected to maintain time records of <u>all</u> services if they ever anticipate requesting the court to approve additional charges." <u>Id</u> at p. 2. This requirement is also found in the Requirements for Supplemental Fee Applications in Chapter 13 Cases. Ignoring these easily understood requirements as was done in the Boleman cases is a much bigger problem than block billing. It involves filing billing grids that do not say on their face that they are not based on contemporaneous time records; it involves filing plans that do not disclose payments made by debtors at the commencement of the representation; it involves a mixing of fees and costs that make it difficult to know how much money has actually been allocated to each of these categories; and it involves, in the final analysis, no real proof as to the amount of time the Boleman Firm spent on any task.

As to the questions of costs, the Code provides only for the "reimbursement of actual, necessary expenses" 11 U.S.C. § 330 (a)(1)(B). No evidence was offered at trial concerning the actual cost of making a photocopy, the actual cost of sending a fax, the actual cost of Pacer charges in each case, or the actual cost of credit reports. The plain meaning of 11 U.S.C. § 330 (a)(1)(B) is that actual expenses are those incurred by the applicant as opposed to those charged to the client by the applicant. Given that the Court does not know what any of these actual expenses are in any of these cases, the Court could simply deny reimbursement of these expenses for failure of proof.

What is more troubling as to cost, however, is that the Boleman Firm, by its own

4

admission filed with the Court requests for Supplemental Applications for Allowance and requested reimbursement of costs at a time when some clients had a credit balance for costs. In the case of Pyles, the Boleman Firm admits that at the time the Supplemental Applications for Allowance was filed, the Pyles still hade a credit on costs of $159.76 and that this fact was never stated on the Application. This was also the case in Lipscomb in a credit amount of $53.91, and in the case of Childrey in a credit amount of $113.39. And again, in none of these Supplemental Applications for Allowance is it made apparent that the clients had a credit balance on expenses at the time they were filed.

The above analysis all assumes that the Court will allow the Boleman Firm every penny it has requested for reimbursement of expenses. If the Court reduces or completely disallows these requests for reimbursement, the amount owed to these three clients, and to the remaining eight, could increase dramatically.

In both the areas of fees and costs, the Boleman Firm has not maintained sufficient records to allow this Court to simply review these applications as would normally be done to judge the reasonableness of the amount requested. Judge Spencer has stated that this Court should, employing the twelve Johnson factors and "other considerations," review the fee application and evidence submitted in support thereof (e.g. testimony and affidavits) and adjust the award "(I) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity and the counsel involved." Factor number one of the Johnson factors is "time and labor expended," and the Court is left to fill in the blanks as to how much time was spent on any one task in any one case.

The Court must then use "other considerations" before it comes to a decision of how much additional compensation, if any, is warranted. In making these "other considerations," the Court should consider the practice of filing billing grids that do not say on their face that they are not based on contemporaneous time records The Court should consider the practice of filing plans that do not disclose payments made by debtors at the commencement of the representation. The Court should consider the practice of mixing fees and costs in such a way that it is difficult to know how much money has actually been allocated to each of these categories. Finally, the Court should consider that all of the problems that occur in the billing practices of the Boleman

Firm were created by the firm itself.

    The U.S. Trustee reasserts the points and authorities stated in his brief addressing the evidentiary objection regarding cost.

                                                Respectfully submitted,

                                                W. Clarkson McDow, Jr.
                                                U.S. Trustee
                                                Region Four

                                            By: /s/ Robert B. Van Arsdale
                                                Robert B. Van Arsdale
                                                Assistant U.S. Trustee

                                                CERTIFICATE

    I certify that a true copy of the foregoing was filed into the CM/ECF system on this the 14th day of June, 2007 which caused same to be served on all registered participants in the case via electronic mail, pursuant to II.B.4 of the Administrative Procedures of the CM/ECF System for the United States Bankruptcy Court for the Eastern District of Virginia. Additionally, I caused the same to be served on all parties having requested notice and not registered for electronic notice by United States Mail, postage prepaid.

                                                /s/Robert B. Van Arsdale
                                                  Robert B. Van Arsdale